# FIELD'S HEIRS *vs.* GOLDSBY.

[TRESPASS TO TRY TITLES BY HEIRS-AT-LAW AGAINST PURCHASER AT SALE MADE UNDER ORDER OF ORPHANS' COURT.]

1. *Settled rule of property binding on courts.*—This court does not feel at liberty to depart from a decision which has been recognized by subsequent cases, and which has probably been acted upon as a practical rule of property, although, if the question presented were an open one, a different conclusion might be attained.

2. *Jurisdiction of orphans' court to order sale of land for purpose of distribution.*—The jurisdiction of the orphans' court to order a sale of an intestate's real estate for the purpose of distribution, under the act of 1822 (Clay's Digest, 224, § 16), attaches on the filing of the petition by the administrator, alleging that the real estate "cannot be equally, fairly, and beneficially divided" without a sale, and its recognition by the court in granting the order of sale ; the failure to state in the petition which of the heirs are of full age, is not a jurisdictional fact.

3. *Conclusiveness of proceedings had under such order of sale.*—The failure to issue a citation to the resident heirs, or to make publication as to the non-residents, the failure of the guardian of the infant defendants to deny the allegations of the petition, and the want of proof by deposition of the existence of the alleged ground of sale,—are mere irregularities, which, although they might be sufficient to reverse the proceedings on error, have no weight in a collateral attack.

4. *Failure to give notice of time and place of sale.*—The provisions of the act of 1806 (Clay's Digest, 225, § 24), requiring an executor or administrator to give notice of the time and place of sale, do not apply to sales made by commissioners under the act of 1822, the ratification of which by the court is the test of correctness in complying with the order of sale.

ERROR from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

This action was brought by the plaintiffs in error, as heirs-at-law of Hume R. Field, deceased, against Thornton B. Goldsby, " as well to try titles, as to recover damages for the detention, use and occupation of the south-west quarter of section eleven, in township seventeen, range eight, in the district of lands subject to sale at Cahaba", and lying in Dallas county. The action was commenced in the spring of 1846, and the trial was had in November, 1852. The only plea was the general issue.

On the trial, as the bill of exceptions discloses, the plaintiffs made out a *prima facie* case, by proving their ancestor's title, their own title as his heirs-at-law, the defendant's possession, the value of the rents, &c.; and rested their case. The defendant then introduced a transcript from the records of the orphans' court of Tuskaloosa, which is made an exhibit to the bill of exceptions, and which contains the following proceedings:

On the 30th April, 1835, Constantine H. Perkins, as administrator of said Hume R. Field, deceased, filed his petition in said orphans' court, praying an order of sale of the real estate of his intestate, which embraced the land now in controversy. This petition, which is sworn to, states, "that the heirs and distributees of said estate are the following— that is to say, Nancy Field, relict and widow of said Hume R. Field, who resides in New London, in the State of Connecticut; Harriet H. Perkins, daughter of said Hume R. Field, who resides in Williamson county, Tennessee; Eliza A. Perkins, who is the wife of petitioner; Edward R. Field, who resides in Pulaski, Tennessee; Emily M. Royall, who is the wife of John H. Royall, who resides in the State of Tennessee; Mary F. Tarver, who is the wife of John A. Tarver; Jane M. Field, who is an infant within the age of twenty-one years; and Henrietta S. Field, who is an infant within the age of twenty-one years, and residing in New London, in the State of Connecticut." The order of sale is prayed on the ground that, "owing to the number of heirs and distributees of said estate, the distance which many of them reside from the above-described lands, and the various separate parcels of said land scattered in different sections of the State, said lands cannot be equally, fairly, and beneficially divided among the said heirs and distributees, without a sale thereof."

On the filing of this petition, it was ordered by the court "that Henry A. Snow be appointed guardian *ad litem* to Jane M. Field and Henrietta S. Field, who are infants within the age of twenty-one years; and that citations issue to said John A. Tarver and Henry A. Snow, guardian as aforesaid. And it appearing to the court, from the affidavit of the petitioner, that said Nancy Field, Harriet H. Perkins, Edward R. Field, John H. Royall and Henrietta S. Field do not reside within

the limits of this State, it is therefore ordered by the court, that publication be made in some newspaper printed in the town of Tuskaloosa, notifying the above-named legatees to be and appear before the judge of our said court, on Monday, the 15th day of June next, and defend against said petition, if they see cause." But the record nowhere shows that the terms of this order were complied with.

After two continuances by the administrator, the petition was heard on the 4th August, 1835, when the following decree was rendered: "This day came on to be heard the petition of Constantine Perkins, administrator of the estate of Hume R. Field, to sell the real estate belonging to said estate; and due and legal notice having been given to all the heirs of said estate that were of age, and to the guardian of those that were minors; and the answers of said guardian, denying the allegations contained in said petition, being filed; and it appearing to the satisfaction of the court, by the depositions of Z. B. Snow and Robert Ellyson, that the tracts of land in the petition described, of which said Hume R. Field died seized, cannot be equally, fairly, and beneficially divided among the heirs and distributees of said estate, without a sale thereof: It is ordered and decreed, that" three persons, whose names are mentioned, "be, and they are hereby, appointed commissioners with full authority to sell the lands described in said petition", which are particularly described in the order; "the commissioners giving notice of the time and place of sale, by written advertisements set up at three public places in said county of Tuskaloosa, at least forty days before the sale, and publishing the same in one of the newspapers printed in the town of Tuskaloosa, for three weeks successively before the day of such sale,—sell said land on a credit until the first day of March, 1836, requiring the purchasers to execute their bonds, with good security; and report their proceedings to this court to be holden after such sale."

The next entry, which is dated November 13, 1835, recites that the commissioners came that day, and made their report, which is set out at length in the minute entry, and which shows that Thornton B. Goldsby had become the purchaser of the quarter-section now sued for. The entry then pro-

ceeds,—" And it appearing to the satisfaction of the court that the terms of said sale have been complied with, it is therefore ordered and decreed by the court", that the said commissioners make conveyances to the other purchasers for the lands bought by them; "and it is further ordered and decreed, that the above-named commissioners do make unto the said Thornton B. Goldsby a title as aforesaid to the following described land—viz., the south-west quarter of section eleven, in township seventeen, and range eight, in the Cahaba land-district."

The defendant also offered in evidence the deed executed to him by the commissioners, under this order.

"This evidence being before the jury, the court charged them, that the said proceedings of said orphans' court, and the said deed, gave the defendant a title to the land sued for, and the plaintiffs could not recover; to which charge the plaintiffs excepted", and which they now assign as error.

WATTS, JUDGE & JACKSON, with whom was GEORGE W. GAYLE, for the plaintiffs in error, contended,—

1. That, on the death of Field, the lands of which he was seized and possessed in fee descended to his heirs, *eo instanti;* subject, however, to be divested by the action of the orphans' court, 1st, for the payment of debts, or, 2dly, for the purpose of making a fair, equal, and beneficial division among them.

2. That the orphans' court is one of limited and special jurisdiction, and has no power to order a sale of a decedent's lands, except under and by virtue of the statute.—Clay's Digest, 224, § 16. The court cannot, of its own motion, exercise this extraordinary jurisdiction; but its record must affirmatively show that the facts specially set forth in the statute were alleged and proved.—Bishop's Heirs v. Hampton, 15 Ala. 767; Taliaferro v. Bassett, 3 *ib.* 670; McCartney v. Calhoun, 11 *ib.* 110, 119; Thatcher v. Powell, 6 Wheat. 119; Williams v. Peyton's Lessee, 4 *ib.* 77; Borden v. Fitch, 15 Johns. 141; Dakin v. Hudson, 6 Cowen, 224; Blann v. Grant, 6 Ala. 110.

3. The statute requires the administrator to set forth, in addition to the ground on which the sale is sought, the names of the heirs, "particularly stating which are of age, and

which are infants or *femes covert.*" Unless this is done, the court does not acquire jurisdiction.—Griffin's Heirs v. Griffin's Executors, 3 Ala. 623; Cloud and Wife v. Barton, 14 *ib.* 348; Blann v. Grant, 6 *ib.* 110. The petition in this case does not comply with the statutory requisition.

4. The statute further requires citations to be issued and served at least forty days before the order can be granted, and publication to be made against non-residents. The record is defective in these particulars, and the recitals in the decree cannot aid it.—Bloodgood v. Hartley, 16 Ala. 233; Butler v. Butler, 11 *ib.* 668; Molett v. Kenan, 22 *ib.* 484; Starr v. Scott, 8 Conn. 480; Wattles v. Hyde, 9 *ib.* 10.

5. Before the court can take jurisdiction to order a sale, when the allegations of the petition are denied by the answer, it must be satisfied by proof, taken by deposition as in chancery cases, and filed in the cause; and the mere recitals in the record are not sufficient.—Clay's Digest, 225, § 19; McMekin v. Bobo, 12 Ala. 273; Hill v. Hill, 9 *ib.* 793.

6. It has been held, under the other branch of the statute, where the sale was ordered for the payment of debts, that the proceeding was *in rem;* but those decisions do not cover this case. Here, the heirs are the only persons interested; in the other case, they have no interest, if the property is needed for the payment of debts. No judgment can be held conclusive on a party, until he has notice; and the statute is explicit in requiring notice to the heirs.—McCurry v. Hooper, 12 Ala. 823; Blann v. Grant, 6 *ib.* 110; Jennings & Graham v. Jenkins, 9 *ib.* 285.

7. It is somewhat difficult, in a case like this, to ascertain what is necessary to be done to divest the title of the heirs, as the authorities are slightly conflicting. Wallace v. Hall's Heirs, 19 Ala. 367, and the authorities there cited, show that the title of the heirs is not divested, until a final decree ordering conveyances to be made to purchasers. The record, then, must show that all things, required to be done before this decree, were done. The statute (Clay's Digest, 225, § 24) requires notice of the sale to be given by the administrator or commissioners, by advertisements posted up at three or more public places in the county in which the lands lie, for at least forty days before the sale, and by publication in

some newspaper for three successive weeks before the sale.—Wyman v. Campbell, 6 Port. 245; Gantly's Lessee v. Ewing, 3 Howard's (U. S.) R. 707; Hawkins v. Kemp, 3 East, 410.

8. The record nowhere shows that any citations were issued, except by a general allegation that due and legal notice was given; and nothing in the record shows that any parties appeared. The authorities above cited show that this was essential to give the court jurisdiction, and that it ought distinctly and affirmatively to appear of record.

9. The court is nowhere directed to order what notice of the time and place of sale shall be given, but the statute itself prescribes the notice. In Wyman v. Campbell, 6 Porter, 245, it is conceded that, unless the commissioners pursue the terms of the order, the sale would not be valid. Is not the statute as imperative as the order of the court? and are not the commissioners as much bound to pursue its terms? It positively appears that the commissioners, in this case, did not give the notice required by the statute, in the county in which the lands lie. Is not the purchaser bound, at his peril, to see whether the notice required by the statute has been given? Why is he not as much bound to take notice of this, as to see that the petition sets forth sufficient grounds to give the court jurisdiction, or to know that an administrator cannot sell property at private sale? Any act, in contravention of a positive statute, is not merely voidable, but void.—Fambro v. Gantt, 12 Ala. 298; Ventress v. Smith, 10 Peters, 161.

The case of Wyman v. Campbell, cited for defendant, was decided under the act of 1820, which does not require the names of the heirs, &c., to be set forth; and the *dicta* in the other cases cited are based upon it. The case of Brown v. Lanman, 1 Conn. 469, has been overruled by the later cases above cited.

Wm. M. Murphy and J. W. Lapsley, *contra*, argued,—

1. That the petition substantially complies with all the requisitions of the statute, even if the jurisdiction of the court depended on the statement of the ages of the heirs. The statement that two of the heirs are minors, is an implied statement that the others are not, on the maxim " *inclusio*

*unius est exclusio alterius.*" This is the plain and obvious meaning of the petition, and any other construction of it would be hypercritical. The orphans' court was created for the mass of the people, who are unskilled in the technical language of the law, and who use words in their common and ordinary acceptation; and the statute, under which this sale was made, is remedial. To construe such proceeding by strict, technical rules, requiring "certainty to a certain intent in every particular," would defeat the object of the statute, and render it worse than useless to the great majority of those for whom it was intended.

2. That the jurisdiction of the court was not dependent on the statement in the petition of the ages of the heirs, but attached on the filing of the petition by the administrator, stating one of the statutory grounds for ordering a sale; that the proceedings were *in rem* against the estate, and therefore valid without personal notice; and that the several objections urged against their validity, were mere irregularities or errors, which could not affect them in a collateral proceeding.—Wyman v. Campbell, 6 Porter, 245; Duval's Heirs v. McLosky, 1 Ala. 708; Perkins v. Winter, 7 *ib.* 864; Duval's Heirs v. P. & M. Bank, 10 *ib.* 636; Bishop's Heirs v. Hampton, 15 *ib.* 766; Thompson v. Tolmie, 2 Peters, 157; Grignon's Lessees v. Astor, 2 Howard's (U. S.) R. 342; Brown v. Lanman, 1 Conn. 469; 4 Ohio, 129.

GOLDTHWAITE, C. J.—The principal objection which has been urged against the proceedings in the orphans' court, is, that the petition filed by the administrator does not particularly set forth the heirs who are of full age, which, it is insisted, is a jurisdictional fact essential to the exercise of the power to decree a sale of lands under the act of 1822, (Clay's Digest, 224, § 16,) when the sale is necessary to be made in order to make an equal division among the heirs.

In the case of Duval v. McLosky, 1 Ala. 708, an attempt was made collaterally to impeach the proceedings of the orphans' court, directing a sale of land, under the same statute, for the payment of debts of the intestate. The record in that case contained no petition for the sale of the particular lands in question, but simply an order of court reciting that the ad-

ministrator had presented a petition in court, praying an order for the sale of the lands described therein, on the ground that the personal estate, and the sales of lands made under a previous order, were not sufficient to pay the debts of the intestate; but there was no recital as to the names of the heirs, their ages, &c. The court held, that the recital in the record showed that a petition had been filed, which described the lands sought to be sold, and disclosed the statutory ground on which the sale was sought; that the jurisdiction of the court attached upon a petition containing these allegations; and that the omission to state the names of the heirs, their ages, &c., was simply an irregularity which could not prejudice the title of a purchaser, under the decree for a sale.—See, also, Bishop v. Hampton, 15 Ala. 761.

In Duval v. The P. & M. Bank, 10 Ala. 636, so far as we are able to judge from the statement of the case, the same question arose, and the doctrine in the former case was re-applied.

It is true that, in the cases cited, the object of the sale was to pay debts; but that cannot affect the principle. The statute makes the same requirements in each case, and if they are not essential to the exercise of the power of the court in the one case, they cannot be in the other. Could we regard the question as an open one, we might arrive at a different conclusion from that which was attained in Duval v. McLosky, *supra;* but after it has been recognized by a subsequent decision, and has probably been acted upon as a practical rule of property, we do not feel at liberty to depart from it.

The jurisdiction of the orphans' court having attached, by the recognition of the petition, the failure to issue a citation to the resident heirs, or to make publication as to the non-residents, or the failure on the part of the guardian of the infant defendants to deny the allegations of the petition, and the want of proof as to the existence of the alleged ground of sale by depositions, are all mere irregularities; and, although either of them might be sufficient to reverse the proceedings, have no weight in a collateral attack.—Perkins v. Winter, 7 Ala. 855.

The only remaining question is, whether the proceedings are void by reason of the failure to give the notice of the sale

required by the act of 1806. If it was conceded that the authority of the administrator to sell under the decree, was in the nature of a power, and required the observance of every formality the statute might impose; still, we think, the statute referred to has no application to sales made under an order of court by commissioners. Prior to the act of 1822, under which these proceedings were had, it was the executor or administrator who was ordered to sell, and who conducted the sale; and it is only to cases of this character that the terms of the statute are applicable. Here, however, it was not the administrator who was ordered to sell, but this power was directed to be exercised by commissioners, who are but the ministerial agents of the court; and the test of its correctness, so far as a compliance with the order of sale is concerned, is its ratification by the court.—Jennings v. Jenkins, 9 Ala. 285.

Judgment affirmed.